**Opinion issued April 11, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00421-CV

_____

## PELCO CONSTRUCTION, INC., Appellant

## V.

## DANNENBAUM ENGINEERING CORPORATION, DANNENBAUM ENGINEERING COMPANY–HOUSTON, LLC, STEVEN LLOYD MCGARRAUGH, ALAN D. HIRSHMAN, KURT AMUNDSON, AND AMUNDSON CONSULTING, INC., Appellees

On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Case No. 26356

## O P I N I O N

Pelco Construction, Inc. appeals the trial court's granting of two motions that dismissed Pelco Construction's claims against Dannenbaum Engineering

Corporation, Dannenbaum Engineering Company–Houston, LLC, Steven Lloyd McGarraugh, Alan D. Hirshman, Kurt Amundson, and Amundson Consulting, Inc. The dismissals were all based on Pelco Construction's failure to file a certificate of merit along with its petition. In one issue, Pelco Construction argues that the trial court erred by dismissing its claims against appellees because a certificate of merit was not required for the claims it brought.

We affirm, in part, and reverse and remand, in part.

## Background

The Oak Island Volunteer Fire Department's fire station was destroyed by Hurricane Ike in 2008. Chambers County sought funding from the Federal Emergency Management Agency ("FEMA") to reconstruct the fire station.

Chambers County entered into a master services agreement ("MSA") with Dannenbaum Engineering Company–Houston, LLC to oversee the design and reconstruction of the fire station. Alan Hirshman, a licensed engineer, and Steven McGarraugh, a licensed architect, provided their services to Dannenbaum Engineering Company–Houston, LLC through another company: Dannenbaum Engineering Corporation. The parties draw no distinction between the two Dannenbaum companies in their briefs and nothing in our analysis requires a differentiation. Accordingly, for the purposes of this appeal, we will treat the two companies as a single entity, "Dannenbaum Engineering."

2

According to the terms of the MSA, the services provided by Dannenbaum Engineering were divided into two phases. The first phase consisted of assessment and design of the fire station. The second phase consisted of oversight of the construction of the fire station. The MSA provided, "Phase II shall not commence until the permanent repair project has been approved and funds have been provided by FEMA."

As it neared the second phase of the MSA, Dannenbaum Engineering entered into a Staff Support Agreement with Amundson Consulting, Inc. Under the contract, Amundson Consulting provided the services of Kurt Amundson. Amundson worked as an emergency management consultant. He had "28 years['] experience in assisting local governments [with] obtain[ing FEMA] Public Assistance Grants to complete projects to repair damages sustained from natural disasters." His work involved overseeing the bidding process and, when the bid was awarded to Pelco Construction, monitoring Pelco Construction's "progress in constructing the Project to ensure that Pelco constructed the Project according to the contract terms, conditions, and specifications." As provided in the contract, Amundson worked "under the supervision, direction and control of" Dannenbaum Engineering. For all of his work, Amundson reported to Hirshman.

Pelco Construction was one of the businesses that submitted a sealed bid to construct the fire station. Before submitting a bid, Pelco Construction met with

3

representatives of Chambers County, Hirshman, and Amundson in a pre-bid conference. At the conference, Hirshman "discussed the construction plans and specifications for the reconstruction" of the fire station. Pelco Construction alleges that Hirshman and Amundson, among others, told it that FEMA funding for the fire station project had been approved.

Chambers County ultimately awarded the construction contract to Pelco Construction. One provision of Pelco Construction's contract required Chambers County,

> at the written request of [Pelco Construction], prior to commencement of the Work and thereafter, [to] furnish [Pelco Construction] reasonable evidence that financial arrangements have been made to fulfill [Chamber County's] obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to [Pelco Construction].

The parties dispute whether, at the time that Pelco Construction was awarded the contract, FEMA had approved the construction for reimbursement. Regardless, around the time that Chambers County began accepting bids on the contract, Amundson was working to obtain approval of an amendment with FEMA for increased costs. One of the reasons asserted for increased cost construction was "the building design had to be changed to meet new [Americans with Disabilities Act ('ADA')] requirements. The new ADA requirements required that

4

there be an ADA ramp inside the building not just on the outside of the building." Adding the interior ramp would require increasing the size of the building.

At least by June 15, 2010, FEMA had determined that the interior ramp was not required under the law and, accordingly, "the request for an increase in building size for the interior ADA ramp is not eligible for FEMA funding." Nevertheless, on July 8, Chambers County and appellees provided Pelco Construction with a construction plan, which included the interior ramp. The plan was stamped "approved for construction." Dannenbaum told Pelco Construction to begin construction, and Pelco Construction began work on July 14 even though FEMA had not approved the final plan or funding for the interior ramp.

Over the next four months, as Pelco Construction continued work on the fire station, Chambers County and appellees continued to communicate with FEMA to obtain approval for the interior ramp and the corresponding increase in size of the building. At some point in September 2010, Chambers County informed FEMA that redesigning the building to remove the interior ramp was not possible because construction had already begun and a redesign would require a costly stop to the project.

On October 28, 2010, Amundson contacted Michael Ramirez, a project manager for Pelco Construction, and told him to stop construction. The parties dispute whether Amundson stated that the order to stop working came from

FEMA. Nevertheless, Pelco Construction stopped work while Chambers County continued to seek approval on the interior ramp from FEMA.

On November 17, 2010, FEMA gave tentative approval to constructing the firehouse with the interior ramp. On December 7, Hirshman, on behalf of Dannenbaum Engineering, instructed Pelco Construction to resume construction of the firehouse. Instead, on December 14, Pelco Construction sent Chambers County a notice of termination of the contract.

Pelco Construction filed suit against Chambers County on April 8, 2011. On November 3, 2011, Pelco Construction filed an amended petition, adding Dannenbaum Engineering, McGarraugh, Hirshman, and Amundson to the suit. Pelco Construction asserted a claim of fraudulent misrepresentation against Dannenbaum Engineering, McGarraugh, Hirshman, and Amundson. The thrust of the claim was that Dannenbaum Engineering, McGarraugh, Hirshman, and Amundson had misrepresented that FEMA had approved the construction plans given to Pelco Construction and that Pelco Construction was injured by the order to stop work on the construction.

In March 2012, Dannenbaum Engineering, McGarraugh, and Hirshman filed a motion to dismiss on the basis that Pelco Construction was required to file a certificate of merit along with the petition that brought them into the suit. They

argued that, because Pelco Construction had failed to file the certificate of merit along with the petition, the claims against them must be dismissed with prejudice.

Pelco Construction filed its last amended petition on April 5th. This petition added Amundson Consulting as a defendant, including it in Pelco Construction's claim for fraudulent inducement. The same day, Pelco Construction filed its response to the motion to dismiss. Pelco Construction argued that it was not required to file a certificate of merit for the fraudulent misrepresentation claims against Dannenbaum Engineering, McGarraugh, and Hirshman. The trial court disagreed and dismissed with prejudice Pelco Construction's claims against them.

A short time later, Amundson and Amundson Consulting also filed a motion to dismiss based on the same argument that Pelco Construction had failed to include a certificate of merit along with the petitions that brought them into the suit. Pelco Construction responded, again arguing that it was not required to file a certificate of merit for the claims it brought. The trial court granted Amundson and Amundson Consulting's motion as well and dismissed Pelco Constructions claims against them with prejudice. Pelco Construction timely appealed the dismissal orders.

## Certificate of Merit

In its sole issue on appeal, Pelco Construction argues that the trial court abused its discretion by dismissing its claims against appellees because a certificate of merit was not required for the claims it brought.

### A.    Standard of Review

An order granting or denying a motion to dismiss for failure to file a certificate of merit is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(f) (Vernon 2011). We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *Carter & Burgess, Inc. v. Sardari*, 355 S.W.3d 804, 808 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). To the extent we are required to interpret a statute, that aspect of our review is performed de novo. *See TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 752 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

### B.    Analysis

A plaintiff is required to file a certificate of merit in "any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). In this context, a "licensed or registered professional" includes

"a licensed architect, licensed professional engineer . . . or any firm in which such licensed or registered professional practices . . . ." *Id.* § 150.001(1) (Vernon 2011). If a plaintiff's claim for damages implicates the special knowledge and training of an architect, it is a claim for damages arising out of the provision of professional services. *See Sardari*, 355 S.W.3d at 809.

When required, the certificate of merit must be filed with the first-filed complaint asserting the relevant claim against a professional. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a); *Pakal Enters., Inc. v. Lesak Enters. LLC*, 369 S.W.3d 224, 228 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Failure to file a certificate of merit in such instances requires dismissal of the complaint against the defendant. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e).

Pelco Construction did not file a certificate of merit along with its first-filed complaints of fraud against appellees. Accordingly, we must review Pelco Construction's petition to determine whether its claims of fraudulent misrepresentation required a certificate of merit. In performing this review, we consider the live pleading on file when the trial court considered the motion. *TDIndustries*, 339 S.W.3d at 753.

The relevant portion of Pelco Construction's live pleading asserts the following:

> 88.    Defendants McGarraugh and Hirshman, in their capacities as a registered architect and registered professional engineer and as

9

representatives of Dannenbaum, and Amundson, in his capacity as a Florida professional emergency manager and as a representative of Dannenbaum, and all collectively as the construction managers appointed by Chambers County for the [fire station] project, made representations to Pelco in regard to the [fire station].

89.     McGarraugh and Hirshman, through the construction plans stamped with their official seals, signatures and date of signing, indicated to Plaintiff that said documents were to be used for the construction of the [fire station].

90.     As construction manager for [the fire station], Defendants then later directed Pelco to begin construction on the [fire station]. . . .  By doing so, Defendants represented to Pelco that the [fire station] project was approved for funding by FEMA.

91.     This was not true; the improved project had yet to be approved by FEMA which Defendants had direct knowledge of.  Relying on the representations made by Defendants, Pelco began construction of the [fire station].

92.     A few months [later], on or about October 28, 2010, following commencement of construction on the [fire station], Pelco received a telephone call from Amundson, . . . who stated that FEMA required the work on the [fire station] be stopped because Dannenbaum had not gotten approval of the construction plans from FEMA.  Dannenbaum further evidenced this in written correspondence dated October 28, 2010 stating:

> "The ceasing of the construction operations is required while required administrative paper work for the construction of the project is reviewed and approved by FEMA.  Once the required paper work has been approved, we will inform you so that you may resume your construction of the project."

93.     Relying on Dannenbaum's statements regarding FEMA's requirement that work be stopped, Pelco immediately ceased construction on the [fire station].

94.    At no time did Chambers County or Defendants indicate to Pelco that the construction plans were not yet wholly approved by FEMA. Without FEMA approval, funding was not obtained as told to Pelco at the pre-bid conference. At no time did Chambers County or Defendants indicate to Pelco that if FEMA funding was lost that Chambers County was going to fund the reconstruction of the [fire station] itself.

95.    . . . . After forty days, Dannenbaum sent correspondence stating Pelco was to remobilize and continue construction.

96.    Pelco then sent Chambers County and Defendants notice of termination . . . based upon the misrepresentations Defendants made to Pelco regarding FEMA requiring the work stoppage while reviewing and approving paper work Defendants, as Chambers County's construction manager, failed to gain approval on prior to construction.

## 1.    Dannenbaum Engineering, McGarraugh, and Hirshman

It is undisputed by the parties that McGarraugh is a licensed architect and that Hirshman is a licensed engineer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a) (requiring a certificate of merit to be filed in appropriate circumstances when the claim is against a licensed or registered professional); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1) (including licensed architects and engineers as licensed professionals). It is also undisputed that Dannenbaum Engineering is the firm in which McGarraugh and Hirshman practice. *See id.* § 150.001(1) (including firm in which licensed professionals practice as licensed professional). The remaining question, then, is whether the

11

claims Pelco Construction brought against them arose "out of the provision of professional services." *Id.* § 150.002(a).

In the start of its section asserting fraudulent misrepresentation against appellees, Pelco Construction explicitly recognized that McGarraugh and Hirshman "made representations to Pelco in regard to the" fire station "in their capacities as a registered architect and registered professional engineer and as representatives of Dannenbaum." Moreover, all of the misrepresentations that Pelco Construction alleged that McGarraugh, Hirshman, and Dannenbaum Engineering made were made in the context of their participation in the redesign and construction of the fire station.

Pelco Construction argues that its claims of fraudulent misrepresentation did not require a certificate of merit because its claims concern misrepresentations regarding FEMA-approved funding and such misrepresentations are unrelated to the provision of professional services. We hold that this argument is based on too narrow of a reading of the statute.

In 2009, the Legislature amended section 150.002. Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 150.002). A legislative bill analysis explains that one purpose of the change was to make it clear that the statute was meant to encompass far more than negligence. House Comm. on Judiciary & Civil

12

Jurisprudence, Bill Analysis, Tex. S.B. 1201, 81st Leg., R.S. (2009). "[D]espite clear language in the statute and the fact that it was specifically amended to broaden it in 2005," Texas courts had continued to construe the requirement for filing a certificate of merit to apply only to claims for negligence. *Id.* Further amendments were added to clarify that the requirement to file a certificate of merit broadened "from 'negligence' actions to 'any action arising out of the provisions of professional services.'" *Id.*

Contrary to Pelco Construction's assertion, section 150.002 does not require the specific acts creating the claim for the tort also constitute the provision of professional services. Instead, the acts creating the claim must "*aris[e] out of* the provision of professional services." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a); *see also TDIndustries*, 339 S.W.3d at 754 (holding claim arises out of the provision of professional services if claim *implicates* the professional's education, training, and experience in applying special knowledge or judgment).

The Fort Worth Court of Appeals reached a similar conclusion in *Capital One, N.A. v. Carter & Burgess, Inc.*, 344 S.W.3d 477 (Tex. App.—Fort Worth 2011, no pet.). In that case, New America Georgetown, LLC was contractually obligated to bring water, sanitary sewer, and storm sewer lines to the boundary of certain property. *Id.* at 479. The contract required obtaining five easements. *Id.* Although it obtained only four, New America represented to Carter & Burgess that

it had obtained all five. *Id.* Carter & Burgess informed the plaintiff that all five easements had been obtained. *Id.* The plaintiff later brought suit against New America and Carter & Burgess on this misrepresentation. *Id.* Carter & Burgess sought a motion to dismiss based on the plaintiff's failure to file a certificate of merit. *Id.*

One of the plaintiff's arguments on appeal was that discussions about a land easement, its procurement, and its recording in the real property records "do not arise out of the provision of [Carter & Burgess's] professional services." *Id.* at 480. The court noted that the plaintiff's architect had contracted with Carter & Burgess to "provide professional engineering services in connection with" the development of the land. *Id.* at 480–81. The express language of the contract acknowledged the use of professional engineering and surveying services. *Id.* at 481. The court held that

> the only reason that [the plaintiff] would have to rely upon [Carter & Burgess's employee's] alleged false representations . . . was because the statements were made as part of [Carter & Burgess's] performing a professional service necessary for the planning, progress, or completion of [its] engineering services—an activity that expressly constitutes "the practice of engineering."

*Id.*

The same reasoning applies here. The alleged misrepresentations were made during a pre-bid conference where Hirshman and Amundson explained the project to Pelco Construction and during Dannenbaum Engineering's oversight of Pelco

14

Construction's construction of the fire station according to Dannenbaum Engineering's specifications. The matter of funding from FEMA also required Dannenbaum Engineering to communicate with FEMA to explain why the interior ramp was needed and how that affected the design and construction of the fire station. Pelco Construction does not claim that these acts do not constitute the provision of professional services. Accordingly, the alleged misrepresentations arose out of the provision of professional services.

Pelco Construction relies on a number of cases for its argument that it did not have to file a certificate of merit. *See M–E Engineers, Inc. v. City of Temple*, 365 S.W.3d 497, 499 (Tex. App.—Austin 2012, pet. denied); *Howe–Baker Eng'rs, Ltd. v. Enter. Prods. Operating, LLC*, No. 01-09-01087-CV, 2011 WL 1660715, at *1 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (mem. op.); *TDIndustries*, 339 S.W.3d at 754–55; *Curtis & Windham Architects, Inc. v. Williams*, 315 S.W.3d 102, 107–08 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419, at *3 (Tex. App.—San Antonio 2007, no pet.) (mem. op.). These cases are not in conflict with our holding.

In *M–E Engineers*, the City of Temple sued an engineer and his firm, alleging negligence and breach of contract. 365 S.W.3d at 499. The City of Temple included a certificate of merit with its petition, and the trial court denied the motion to dismiss. *Id.* On appeal, the engineer and his firm argued that the

15

certificate of merit was deficient because it failed to explain specifically how they had breached the contract. *Id.* at 505. The court of appeal explained that the affidavit in the certificate of merit was not required to "satisfy each element of any legal theory or claim on which the plaintiff intends to rely." *Id.* Instead, the affidavit "must identify and verify the existence of any professional errors or omissions that are elements or operative facts under any legal theory on which the plaintiff intends to rely to recover damages." *Id.* at 506. Accordingly, the court held that "the Legislature [did not intend] to require affiants with expertise in such fields as engineering or architecture to opine regarding such far-afield subjects as contract construction or agency." *Id.* at 507.

The most obvious distinction with this case is that no certificate of merit was filed here. More importantly, simply because any affiant for Pelco Construction would not have been required to explain how Pelco Construction meets every element for its fraudulent inducement claim does not mean that a certificate of merit was not required.

In *Howe–Baker*, the plaintiffs joined one defendant ten months after suit had been filed. 2011 WL 1660715, at *1. The only claim against that defendant was tortious interference with existing contract. *Id.* at *6. Specifically, the plaintiff alleged that that defendant tortiously interfered with the other defendant's contracts "by transferring personnel from [the first defendant] to other assignments that were

16

more lucrative for" the joined-defendant. *Id.* We held a certificate of merit was not required for this claim because the joined-defendant's "alleged decisions about the assignment of its employees . . . do[] not arise out of the provision of professional services." *Id.*

In *Howe-Baker*, there was no indication that the joined-defendant was providing professional services. *See id.* Accordingly, there were no professional services from which the alleged tort could have arisen. Here, the alleged fraudulent misrepresentations arose directly from the professional services that McGarraugh, Hirshman, and Dannenbaum Engineering were providing.

Similarly, in *TDIndustries*, there was no indication that the defendant's operation of a freight elevator arose from the provision of professional services. 339 S.W.3d at 754–55. The defendant was a licensed professional engineering firm and provided management services to the City of Houston for a convention center. *Id.* at 751. The plaintiff was injured when a freight elevator door closed and struck him in the head while he was pushing a trash cart into the elevator. *Id.* The elevator was operated by an employee of the defendant, but the employee did not hold any professional engineering license. *Id.* at 754–55.

While the defendant was a licensed professional engineering firm, there is no indication that its operation of the freight elevator arose from the provision of professional services. *Id.* In reaching this holding, we clarified that we did "not

take the position that operation of a freight elevator could never implicate an engineer's specialized knowledge or judgment; there is simply a reasonable basis for the trial court to determine that the circumstances pled by [the plaintiff] do not implicate such knowledge or judgment." *Id.* at 755.

*Curtis & Windham* is part of a line of cases following the 2005 amendment of section 150.002 holding that, despite the changes to it, the statute required a certificate of merit for only negligence claims. 315 S.W.3d at 107–08. Accordingly, we held that the plaintiff's "claims for damages for breach of fiduciary duty, fraud, deceptive trade practices, unjust enrichment, and the filing of a frivolous lawsuit . . . and their request for a declaratory judgment do not implicate a negligent act, error, or omission." *Id.* at 108. As we have already recognized, however, the statute was amended in 2009 to make clear that the statute applied to more than just negligence claims. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992; House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. S.B. 1201, 81st Leg., R.S. (2009).

Similarly, *Gomez* also interpreted the 2005 amendment and held that the statute did not apply to claims other than negligence. 2007 WL 2846419, at *3. Accordingly, it has also been abrogated by statute.

We hold that Pelco Construction was required to file a certificate of merit along with its first-filed petition asserting claims of fraudulent inducement against McGarraugh, Hirshman, and Dannenbaum Engineering. We overrule Pelco Construction's sole issue as it applies to them.

## 2. Amundson and Amundson Consulting

Section 150.002 requires a certificate of merit to be filed with any applicable claim brought against a "licensed or registered professional." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). "'Licensed or registered professional' means a licensed architect, licensed professional engineer, . . . or any firm in which such licensed or registered professional practices." *Id.* § 150.001(1). The term does not include, however, third-party contractors with the firm. *See id.*

Amundson Consulting had a contract with Dannenbaum Engineering to provide support personnel. Amundson was the only person identified as support personnel under the contract. While the contract provided that Amundson would work under the supervision, direction and control of Dannenbaum Engineering, Amundson remained an employee of Amundson Consulting. Pelco Construction argues that because Amundson and Amundson Consulting were not employees of Dannenbaum Engineering, they have no basis to claim any right to a certificate of merit afforded to Dannenbaum Engineering. We agree.

19

Amundson and Amundson Consulting acknowledge that they do not fit within the definition of "licensed or registered professionals." They rely on two cases to assert that Pelco Construction was required to file a certificate of merit for its claims against them.

In *Capital One*, the contract at issue required obtaining five easements. 344 S.W.3d at 479. Although it obtained only four, New America represented to Carter & Burgess that it had obtained all five. *Id.* Carter & Burgess—through its agent Chris Weigand—informed the plaintiff that all five easements had been obtained. *Id.* The plaintiff later brought suit against New America and Carter & Burgess—but not Weigand—on this misrepresentation. *Id.*

On appeal, the plaintiff argued that it did not have to file a certificate of merit because Weigand was not a licensed or registered professional. *Id.* at 481. Weigand was an unlicensed intern. *Id.* The court noted, however, that the plaintiff sued Carter & Burgess, not Weigand. *Id.* It held that the plaintiff could not circumvent the requirements of filing a certificate of merit by alleging that the firm was liable for the negligence committed by an unlicensed employee in the course and scope of carrying out the firm's provision of professional services. *See id.*

Similarly, in *Sardari*, the plaintiff sued Carter & Burgess without filing a certificate of merit. 355 S.W.3d at 807, 808. On appeal, the plaintiff argued she did not have to file a certificate of merit because "her claim arose from the actions

20

or omissions of [Carter & Burgess's] 'project manager' who was not a licensed professional." *Id.* at 811. Relying on Capital One, we held that "the use of an unlicensed employee in the course of providing professional services does not eliminate the certificate of merit requirement *applicable when the plaintiff seeks to impose liability on a professional architecture or engineering firm*." *Id.* (emphasis added).

These cases have no application to the present case. Pelco Construction is asserting a claim directly against Amundson and Amundson Consulting. It is not trying, in this instance, to hold another party liable for Amundson's or Amundson Consulting's actions.

We hold that Pelco Construction was not required to file a certificate of merit along with its claims against Amundson and Amundson Consulting. We sustain Pelco Construction's sole issue as it applies to them.

**Conclusion**

We affirm the trial court's order dismissing Pelco Construction's claims against McGarraugh, Hirshman, and Dannenbaum Engineering. We reverse the trial court's order dismissing Pelco Construction's claims against Amundson and Amundson Consulting. We remand for further proceedings.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.