**Opinion issued March 2, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00755-CV

————————————

**TERRACON CONSULTANTS, INC., Appellant**

**V.**

**NORTHERN PRIDE COMMUNICATIONS, INC., Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 114516-CV**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's denial of a motion to dismiss under section 150.002(e) of the Texas Civil Practice and Remedies Code.[1] Appellee Northern Pride Communications, Inc. sued appellant Terracon

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE § 150.002.

Consultants, Inc., a professional engineering firm, for breach of contract and negligence, asserting that Terracon breached its duties in providing materials testing during a construction project. Terracon moved to dismiss Northern Pride's suit, asserting that it arose from Terracon's provision of professional engineering services and that Northern Pride failed to file a certificate of merit.[2]

The trial court denied the motion to dismiss. In its sole issue on appeal, Terracon asserts that the trial court abused its discretion in denying its motion to dismiss.[3] We agree.

We reverse and remand.

## Background

In early 2021, the United States Fish and Wildlife Service[4] hired Northern Pride to provide construction services on a project that included the replacement of guy anchors on a communications tower in Brazoria County, Texas (the "Project"). Northern Pride then contracted with Gulf Coast Concrete and Shell, Inc. ("Gulf")[5] to design and provide concrete for the Project. To ensure that the concrete met the requisite quality standards, Northern Pride retained Terracon to provide construction materials engineering and testing services.

---

[2]     *See id.*

[3]     *See id.* § 150.002(f) (authorizing interlocutory appeal).

[4]     The United States Fish and Wildlife Service is not a party to this appeal.

[5]     Gulf is a defendant in the trial court below, but not a party to this appeal.

In April 2021, Northern Pride and Terracon executed an "Authorization to Proceed, Construction Materials Engineering and Testing Services" (the "Contract"), which provided, in pertinent part, as follows:

**Scope of Services**. . . .

This project involves the replacement of guy anchors for an existing communications tower. Approximately 6 cubic yards of concrete will be placed. Terracon understands that we will make 1 set of 6 cylinders and test the [sic] at 3, 7, 14, 28, 28-days [sic], with a 56-day hold as a spare. The mix used will be 5000 psi and the specified strength at 28-days is 4500 psi.

. . . .

**2. Cast-in-Place Concrete**

[Terracon will] [p]rovide an Engineering Technician to:

. . . .

- Sample and test the fresh concrete for each mix. Perform tests for slump, air content, and concrete temperature only and cast test specimens.
- Perform compressive strength tests of concrete test cylinders in the field.

. . . .

**Compensation**. . . .

. . . Please note that the number of tests and trips described in the Scope of Services does not constitute a minimum or maximum number of tests or trips that may be required for this project.

The Contract's "Additional Terms and Conditions" included:

**11. Sample Disposition, Affected Materials, and Indemnity.** Samples are consumed in testing or disposed of upon completion of tests (unless stated otherwise in the Services).

3

Subsequently, Terracon obtained four cylinder samples of the concrete provided by Gulf at the Project's jobsite. Terracon's testing revealed that the compressive strength of the concrete did not comply with the quality standards that Northern Pride had specified. In June 2021, Terracon issued an opinion letter to Northern Pride, bearing an engineer's seal, signature, and date,[6] stating:

> To the best of our knowledge, information, and belief, based upon observations and tests made by Terracon representatives, the concrete tested and observed by Terracon was NOT constructed in general accordance with the project plans and specifications provided to Terracon. The concrete did not meet the specified strength of 4,500 psi at 28 days. The concrete compressive strength was 1,380 psi at 28 days.

Northern Pride asserts that it "expressly advised" Terracon to retain a concrete cylinder sample for further testing. However, Northern Pride later learned that, although the Contract required Terracon to obtain six cylinder samples of fresh concrete, Terracon had obtained only four cylinders. And all four of those cylinders had been used in testing, so only a fractured piece of a cylinder remained. When Northern Pride "asked that the sample be sent out for further testing," Terracon advised that it had been discarded in an office move.

---

[6] *See* 22 TEX. ADMIN. CODE § 137.33(a) (Texas Bd. of Prof. Eng'g and Land Surveyors, Sealing Procedures) ("The purpose of the engineer's seal is to assure the user of the engineering product that the work has been performed or directly supervised by the professional engineer named and to delineate the scope of the engineer's work."); *id.* § 137.33(b) ("License holders shall only seal work done by them, [or] performed under their direct supervision as defined in §131.2 of this title, relating to Definitions . . . . Upon sealing, engineers take full professional responsibility for that work.").

Northern Pride notified Gulf about the faulty concrete and provided it with an estimate of $63,457.00 to remobilize and to remove and replace the anchors. After Gulf did not respond, Northern Pride filed the instant lawsuit against Gulf. When Gulf learned that Northern Pride could not produce any of the concrete at issue, Gulf moved for spoliation sanctions against Northern Pride. The trial court granted that request and ordered that a "jury instruction regarding the spoliation of evidence will be allowed" against Northern Pride.

Northern Pride then filed a First Amended Petition adding Terracon as a defendant. It asserted claims against Terracon for breach of contract and negligence. Northern Pride alleged that its Contract expressly required Terracon to obtain six cylinder samples of the concrete provided by Gulf and that Terracon had materially breached the Contract by only obtaining four such samples and by failing to retain a concrete sample for further testing.

With respect to its negligence claim, Northern Pride alleged that Terracon owed it a common-law duty to perform the Contract services with ordinary care and skill and that Terracon breached that duty by failing to "obtain the number of concrete cylinder samples required under the [Contract]" and by failing to "protect and maintain the remaining sample." Northern Pride further alleged that Terracon's breaches deprived it of an opportunity to further test and obtain information regarding the concrete, thus subjecting Northern Pride to Gulf's spoilation claim.

5

Terracon moved to dismiss Northern Pride's suit, under section 150.002 of the Civil Practice and Remedies Code, on the ground that it arose from the provision of services by a licensed engineer and that Northern Pride was required to file a certificate of merit with its petition—which it did not do.[7]

Northern Pride responded that its claims "focused only on the number of cylinder samples collected and the failure to retain one cylinder," and therefore a certificate of merit "would not be relevant" and would not aid the trial court in determining whether Northern Pride's suit had merit. Northern Pride also claimed that "[n]either the contractual requirement specifying the number of cylinder samples to be obtained nor the agreement to retain the remaining sample for further testing 'implicate a professional engineer's education, training, and experience in applying special knowledge or judgment.'"

The trial court denied the motion to dismiss. Terracon now appeals.

### Certificate of Merit

In a single issue, Terracon argues that the trial court reversibly erred in denying its motion to dismiss because Northern Pride failed to file a statutorily required certificate of merit with its First Amended Petition. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a).

---

[7] *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a, e).

**A.** *Standard of Review and Governing Legal Principles*

We review a trial court's order on a motion to dismiss under section 150.002 of the Civil Practice and Remedies Code for an abuse of discretion. *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P*., 403 S.W.3d 339, 342 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A trial court abuses its discretion if it acts in an unreasonable and arbitrary manner, without reference to any guiding rules or principles, or if it fails to analyze or apply the law correctly. *Pedernal Energy, LLC. v. Bruington Eng'g, Ltd*., 536 S.W.3d 487, 492 (Tex. 2017).

If the resolution of the issue requires us to construe statutory language, we review such questions de novo. *Id.* at 491. In construing a statute, our goal is to determine and give effect to the legislature's intent. *Id*. "We look to and rely on the plain meaning of a statute's words . . . unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Id*. We construe the words and phrases chosen by the legislature in context, rather than in isolation. *Aleman v. Tex. Med. Bd*., 573 S.W.3d 796, 802 (Tex. 2019). "That is, our objective is not to take definitions and mechanically tack them together, but to consider the context and framework of the entire statute and construe it as a whole." *Id.* (internal quotations omitted). We must "endeavor to afford meaning to all of a statute's language." *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 581 (Tex. 2022) (internal quotations omitted).

Section 150.002 of the Civil Practice and Remedies Code, "Certificate of

Merit," provides, in pertinent part, that:

(a) In *any action . . . for damages **arising out of the provision of professional services** by a licensed or registered professional*, a claimant shall be required to file with the complaint an affidavit of a third-party . . . licensed professional engineer . . . who:

    (1) is competent to testify;

    (2) holds the same professional license or registration as the defendant; and

    (3) practices in the area of practice of the defendant and offers testimony based on the person's:

        (A) knowledge;
        (B) skill;
        (C) experience;
        (D) education;
        (E) training; and
        (F) practice.

(b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. . . .

    . . . .

(e) A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

TEX. CIV. PRAC. & REM. CODE § 150.002(a), (b), and (e) (emphasis added).

By its plain language, this statute applies to "any action arising out of the

provision of professional services, regardless of the legal theory." *Melden & Hunt,*

8

*Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 894 (Tex. 2017). Chapter 150 defines a "licensed or registered professional" to include "a licensed professional engineer . . . or any firm in which such . . . professional practices," including a corporation. TEX. CIV. PRAC. & REM. CODE § 150.001(1–c). The term "arising out of" is not defined in the statute. The ordinary meaning of "arise" is "[t]o originate; to stem (from) . . . to result (from)." *See Arise*, BLACK'S LAW DICTIONARY (11th ed. 2019).

In determining whether a plaintiff's claims "arise out of" the provision of professional engineering services, we look to the definition of the "practice of engineering" in the Texas Occupations Code and to the allegations in the plaintiff's petition. *See CBM Eng'rs*, 403 S.W.3d at 343; *see also* TEX. CIV. PRAC. & REM. CODE § 150.001(3) ("'Practice of engineering' has the meaning assigned by Section 1001.003, Occupations Code."); *Jennings, Hackler & Partners v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas 2015, pet. denied) ("To determine whether and how § 150.002 applies, we consider the live pleadings when the trial court ruled on the motion to dismiss."). A claim "arises out of the provision of professional [engineering] services if the claim implicates the engineer's education, training, and experience in applying special knowledge or judgment." *CBM Eng'rs*, 403 S.W.3d at 343.

When section 150.002 of the Texas Civil Practice and Remedies Code applies, it "obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis." *Melden & Hunt*, 520 S.W.3d at 896. This certificate of merit must be filed with the first-filed complaint asserting the relevant claim against the professional. *See* TEX. CIV. PRAC. & REM. CODE §§ 150.001(1-b), 150.002(a); *TRW Eng'r's, Inc. v. Hussion St. Buildings, LLC*, 608 S.W.3d 317, 321 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "The trial court then determines whether the expert's affidavit sufficiently demonstrates that the complaint is not frivolous." *Melden & Hunt*, 520 S.W.3d at 894; *see also LaLonde v. Gosnell*, 593 S.W.3d 212, 216 (Tex. 2019) ("The certificate-of-merit requirement is a substantive hurdle that helps ensure frivolous claims are expeditiously discharged."). A claimant's failure to file a required certificate of merit leads to a mandatory result. It "shall result in dismissal of the complaint," which "may" be with prejudice. TEX. CIV. PRAC. & REM. CODE § 150.002(e).

**B.** *Analysis*

In determining whether section 150.002 applies here, the threshold questions are (1) whether Terracon is a licensed or registered professional and (2) whether Northern Pride's breach-of-contract and negligence claims constitute actions for damages "arising out of the provision of professional services." *See id.* § 150.002(a).

10

It is undisputed that Terracon is a licensed professional engineering firm. *See id.* § 150.001(1-c). It is also undisputed that Northern Pride contracted with Terracon for professional engineering services. *See id.* § 150.002(a). The parties dispute whether Northern Pride's claims arise out of Terracon's provision of those services. *See id.*

To ascertain whether Northern Pride's claims "arise out of" Terracon's provision of professional engineering services, we look to the definition of the "practice of engineering" in the Occupations Code and to the allegations in Northern Pride's First Amended Petition—i.e., its live petition at the time that the trial court ruled on the motion to dismiss. *See CBM Eng'rs*, 403 S.W.3d at 343; *see also* TEX. CIV. PRAC. & REM. CODE § 150.001(3); *Jennings*, 471 S.W.3d at 581.

Under the Occupations Code, the "practice of engineering" means "the performance of . . . any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." TEX. OCC. CODE § 1001.003(b). The "practice of engineering" includes, among other things:

> (1)    consultation, investigation, evaluation, analysis, planning, . . . providing an expert engineering opinion . . . , engineering for testing or evaluating materials for construction or other engineering use . . . ;
>
> . . .

11

(9)    engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications; [or]

. . .

(12)   any other professional service necessary for the planning, progress, or completion of an engineering service.

*Id.* § 1001.003(c).

In its live petition, Northern Pride states that it "does not dispute [or] complain of Terracon's reports detailing its testing of the concrete and results." Rather, with respect to its breach-of-contract claim, Northern Pride pleads that the Contract required Terracon to "obtain six . . . cylinders of concrete" for compressive testing, that the "plan was to test five . . . cylinders on set, specific days, and to hold the sixth cylinder," and that Terracon "materially breached the contract by only obtaining four . . . concrete cylinder samples." Northern Pride also alleges that Terracon "breached the contract by failing to retain a concrete sample for further testing."

Northern Pride's negligence claim is essentially a recasting of its breach-of-contract claim. According to Northern Pride, Terracon "owed a duty to [Northern Pride] to perform the contracted services with ordinary care and skill" and that Terracon "failed to perform such services with ordinary care and skill because [it] failed to obtain the number of concrete cylinder samples required under the [Contract], and also failed to protect and maintain the remaining sample." Northern

12

Pride pled for damages based on Terracon's failure to perform its contractual and common-law duties, and such breaches having subjected it to spoliation sanctions.

Northern Pride thus maintains that Terracon failed to perform or facilitate the agreed upon scope of testing under the parties' engineering services contract. All of Northern Pride's allegations arise from the Contract and pertain to Terracon's actions in determining the number of concrete samples to obtain for testing and in completing the engineering services by disposing of the testing cylinders.

The "practice of engineering" includes not only the testing and evaluation of construction materials to monitor compliance with specifications, but also includes "any other professional service necessary for the planning, progress, or completion of an engineering service." *See* TEX. OCC. CODE § 1001.003(c)(1), (9), and (12).

Notably, the Contract provides that the "number of tests . . . described in the Scope of Services does not constitute a minimum or maximum number of tests . . . that may be required for this project." Thus, the Contract contemplates Terracon's use of professional discretion in determining the number of tests performed. The Contract also addresses the disposal of testing materials. Whether Terracon actually breached these provisions is a matter to be determined at trial. But, pertinent here, Northern Pride's allegations plainly *implicate* Terracon's (through its licensed professional engineers) education, training, and experience in

13

utilizing special knowledge and judgment in determining how many samples to obtain and whether to retain them. *See CBM Eng'rs*, 403 S.W.3d at 343–44.

In *CBM Engineers*, the plaintiff hired CBM, a professional engineer, as a design specialist to prepare construction documents and specifications and to provide construction administration services. 403 S.W.3d at 343. The plaintiff later complained of various deficiencies and brought claims against CBM; all of which stemmed from the same allegations, as in the instant case. *Id.* In its breach-of-contract claim, the plaintiff alleged that CBM failed to "properly" perform the work required by the parties' contract. In its negligence claim, the plaintiff alleged that CBM failed to exercise ordinary and reasonable care with respect to the design and construction of its parts of the project. *Id.*

This Court in *CBM Engineers* concluded that "[a]ll of [the plaintiff's] claims against CBM pertain[ed] to its design, preparation of construction documents and specifications, and provision of construction administration services." *Id.* at 343–44. Because the "practice of engineering" includes the design and development of specifications for engineering works, engineering for construction, *and other professional services necessary to complete an engineering service*, we concluded that all of the plaintiff's claims were based on CBM's "practice of engineering." *Id.* at 344. Thus, all of the plaintiff's claims arose out of the provision of professional

14

services by a licensed professional and were governed by the requirements of section 150.002. *Id.*

Similarly, here, as discussed above, all of Northern Pride's allegations pertain to Terracon's performance of the scope of testing and completion under the parties' engineering services contract. And the "practice of engineering" includes, not only the testing and evaluation of construction materials to monitor compliance with specifications, but also "any other professional service necessary for the planning, progress, or completion of an engineering service." *See* TEX. OCC. CODE § 1001.003(c)(1), (9), and (12). Accordingly, all of Northern Pride's claims arise out of the provision of professional services by a licensed professional. *See CBM Eng'rs*, 403 S.W.3d at 344.

Northern Pride argues that its claims against Terracon are "wholly based on its contractual obligation to obtain six . . . cylinder samples of concrete and to preserve one for further testing"; that an "engineer's education, training, and experience are not implicated in a claim based on the number of samples Terracon was contractually required to obtain or retain"; and that a trial court "does not need an affidavit of a licensed engineer to understand that four is not six and that disposing of the remaining concrete sample is contrary to preserving it."

The issue is not, however, "whether the alleged mal-acts themselves constituted the provision of professional services, but whether *the claims arise out*

15

*of* the provision of professional services." *Jennings*, 471 S.W.3d at 581 (emphasis added); *see LJA Eng'g Inc. v. Santos*, 652 S.W.3d 916, 920–21 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *TIC N. Cent. Dallas 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71, 79 (Tex. App.—Dallas 2014, pet. denied).[8]

In *LJA Engineering*, a city contracted with an engineering firm to provide professional engineering services for a sewer rehabilitation project, which included inspections and acting as the city's representative in observing the work and making recommendations to other contractors on the project. 652 S.W.3d at 918. During the work, another contractor's employee fell through an open manhole into a sewer pipe and another employee jumped into the pipe to assist, but was killed by exposure to poisonous gas. *Id.* The decedent's family sued the engineering firm for negligence, alleging that it had failed to properly inspect and oversee the work and had failed to maintain a safe work environment by warning workers about the gas and addressing the hazards. *Id.*

---

[8] *See also Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 793 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[T]he issue is not whether the alleged tortious acts constituted the provision of professional services, but rather whether the tort claims arise out of the provision of professional services."); *Pelco Const., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 55 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that section 150.002 "does not require [that] the specific acts creating the claim for the tort also constitute the provision of professional services" but that "the acts creating the claim . . . 'aris[e] out of the provision of professional services'").

16

In determining whether the alleged tortious acts arose out of the provision of professional engineering services, our sister court in *LJA Engineering* explained that the issue was not whether the alleged "mal-acts themselves" constituted the provision of professional engineering services, but whether the claims arose out of those services. *Id.* at 920–21. The court then reviewed the attributes of the "practice of engineering" and concluded that each of the plaintiffs' allegations (e.g., inspections and monitoring compliance) implicated the engineer's education, training, and experience in performing its contractual obligations. Accordingly, despite the apparent tangential nature of the specific acts at issue, the *LJA Engineering* court held that the allegations "arose out of the provision of professional engineering services" and fell within the ambit of the statute. *Id.* The same is true here.

Northern Pride relies on *RCS Enterprises, LP v. Hilton*, No. 02-12-00233-CV, 2013 WL 6795390 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op.), but it is inapposite. There, a modular home builder hired an engineering firm to prepare an engineered foundation for a home. *Id.* at *1. The builder also hired the engineering firm and its president (an engineer) to act as third-party inspectors. *Id.* Later, the plaintiff homebuyers sued the engineering firm and president, *each in their capacity as third-party inspector*, for negligence and fraud, alleging the concealment of construction defects. *Id.* at *1, 4.

17

The court in *RCS Enterprises* noted that, under Texas regulations, a third-party inspector need not be an engineer and need not be supervised by an engineer. *Id.* at *4. Because the work as a third-party inspector did not require any of the specialized knowledge of an engineer, the court concluded that the plaintiffs' claims did not arise out of the provision of "professional services." *Id.* at *5.

Here, unlike in *RCS Enterprises*, there is no allegation that Terracon was hired to act in any capacity other than as a professional engineer.

We therefore conclude that Northern Pride's claims arise out of Terracon's provision of professional engineering services and that Northern Pride was required to comply with section 150.002 of the Civil Practice and Remedies Code by filing a certificate of merit with its First Amended Petition. *See* TEX. CIV. PRAC. & REM. CODE §§ 150.001(1-b), 150.002(a). Because it is undisputed that Northern Pride did not file the required certificate of merit, we hold that the trial court abused its discretion in denying Terracon's motion to dismiss Northern Pride's claims. *See id*. § 150.002(e).

We sustain Terracon's sole issue.

## Conclusion

We reverse the trial court's order denying Terracon's motion to dismiss under section 150.002 of the Texas Civil Practice and Remedies Code and remand the case to the trial court for further proceedings, including the entry of an order granting the motion to dismiss and a determination of whether such dismissal is to be with or without prejudice.[9]

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Countiss and Rivas-Molloy.

---

[9] *See* TEX. CIV. PRAC. & REM. CODE § 150.002(e) (providing that dismissal "may" be with prejudice); *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 496 (Tex. 2017) (holding that decision as to whether dismissal is to be with or without prejudice lies within trial court's discretion)

19