# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00243-CV

Mary Cheney, Surviving Spouse of Decedent Eric Cheney, Appellant

v.

The Levy Company, Appellee

---

## NO. 03-19-00334-CV

Mary Cheney, As Surviving Spouse of Eric Cheney, Appellant

v.

The Levy Company, Appellee

---

## NO. 03-19-00335-CV

Mary Cheney, As Surviving Spouse of Eric Cheney, Appellant

v.

Iteris, Inc., Appellee

---

**FROM THE 169TH DISTRICT COURT OF BELL COUNTY
NO. 286,720-C, THE HONORABLE GORDON G. ADAMS, JUDGE PRESIDING**

## MEMORANDUM OPINION

In three appeals consolidated for consideration, Mary Cheney challenges the trial court's orders dismissing her claims against appellees The Levy Company and Iteris, Inc. She argues that the trial court erred in dismissing her claims against Levy and Iteris based on their assertions of derivative sovereign immunity and in dismissing her claims against Levy for lack of a certificate of merit. We will reverse the trial court's orders dismissing Cheney's claims and remand for further proceedings.

## BACKGROUND

In 2016, Cheney's husband Eric was killed at a newly designed intersection in Killeen, Texas, after the traffic-signal timing was changed without notice to the traveling public. Levy was the "prime" contractor responsible for installing and programming the traffic signal, and Iteris was its subcontractor. Cheney sued the City of Killeen and the Texas Department of Transportation (TxDOT) and later added negligence claims against Levy, Iteris, and a third contractor, HDR Engineering, Inc. (collectively "the Contractor Defendants"). She claimed that the Contractor Defendants failed to use ordinary care in designing the intersection and traffic signals and in reprogramming the signals without providing notice of the change. The City was dismissed from the suit on a plea to the jurisdiction. *See City of Killeen v. Cheney*, No. 03-18-00139-CV, 2018 WL 5832088, at *6-8 (Tex. App.—Austin Nov. 8, 2018, no pet.) (mem. op.).

Levy filed a motion to dismiss under rule 91a, *see* Tex. R. Civ. P. 91a ("a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact"), and section 150.002 of the civil practice and remedies code, which requires the dismissal of a claim arising out of "the provision of professional services by a licensed or registered professional" if

2

the claimant does not file a supporting affidavit by a relevant licensed professional, referred to as a "certificate of merit," *see* Tex. Civ. Prac. & Rem. Code § 150.002. Levy asserted that Cheney's claims against it should be dismissed because (1) Cheney had not filed a certificate of merit as to Levy,[1] and (2) Levy should share in the City's immunity, as set out by this Court in the City's appeal, *see Cheney*, 2018 WL 5832088, at *6-8. Iteris filed a plea to the jurisdiction, also asserting that it had the same governmental immunity as the City.[2]

The trial court held a hearing on Levy's motion and Iteris's plea. It then signed separate orders granting Iteris's plea to the jurisdiction and Levy's motion to dismiss. Cheney filed an immediate interlocutory appeal from the dismissal of her claims against Levy pursuant to section 150.002, which we docketed as cause number 03-19-00243-CV. *See* Tex. Civ. Prac. & Rem. Code § 150.002(f) (order granting or denying motion to dismiss under section 150.002 is "immediately appealable as an interlocutory order"). Cheney then filed a petition for a permissive appeal seeking permission for an interlocutory appeal from the granting of Levy's motion to dismiss under rule 91a and the granting of Iteris's plea to the jurisdiction. *See id.* § 51.014(d) (trial court may permit appeal from otherwise unappealable order if order involves controlling question of law as to which there is substantial ground for difference of opinion and

---

[1] Cheney filed a certificate of merit that discussed the alleged negligence by other defendants but did not refer to any acts or omissions by Levy.

[2] Iteris also asserted that it was entitled to statutory immunity under section 97.002 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code § 97.002 ("A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death."). However, it withdrew that argument in its reply to Cheney's response to its plea to the jurisdiction. We therefore do not address Cheney's appellate issue related to whether Iteris is entitled to immunity under section 97.002.

if immediate appeal may materially advance end of litigation). We granted Cheney's petition, docketed her appeal from the granting of Levy's rule 91a motion to dismiss as cause number 03-19-00334-CV and her appeal from the granting of Iteris's plea to the jurisdiction as cause number 03-19-00335-CV. We then consolidated the three appeals for consideration.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to consider the merits of a claim. *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.). We review a trial court's ruling on a plea to the jurisdiction de novo. *Nettles v. GTECH Corp.*, ___ S.W.3d ___, 2020 WL 5754456, at *3 (Tex. June 12, 2020). The claimant has the initial burden to plead factual allegations or, if necessary, to present evidence demonstrating the trial court's jurisdiction over the plaintiff's claims. *GTECH Corp. v. Steele*, 549 S.W.3d 768, 773 (Tex. App.—Austin 2018) ("*Steele*"), *aff'd by Nettles*, 2020 WL 5754456, at *10. When a defendant challenges the trial court's jurisdiction, the courts should construe the claimant's pleadings liberally in favor of jurisdiction, taking the factual allegations as true unless and only to the extent negated by any evidence presented. *Steele*, 549 S.W.3d at 773. Evidence will negate the claimant's jurisdictional allegations "only to the extent it is conclusively in [the defendant's] favor" when viewed in the light favorable to the claimant. *Id*. at 773-74.

As to the doctrine of derivative immunity, on which both Iteris and Levy seek to rely, our Supreme Court has declined to state outright whether Texas recognizes the doctrine for contractors who undertake work for governmental agencies. *See Nettles*, 2020 WL 5754456, at *5; *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 126 (Tex. 2015). In both *Nettles* and *Brown & Gay*, the court set out the issue and then concluded that it need not decide it. *Nettles*,

4

2020 WL 5754456, at *5 ("[T]he parties have not briefed the questions whether we should recognize a doctrine of derivative sovereign immunity for contractors, or if so, what standard we should adopt for determining the scope of that immunity. . . . [W]e need not decide those questions today."); *Brown & Gay*, 461 S.W.3d at 126 ("We need not establish today whether some degree of control by the government would extend its immunity protection to a private party; we hold only that no control is determinative."). In both cases, the court concluded that derivative immunity, if it were recognized in Texas, would not apply because the contractor in question "had some discretion" with regard to its work for the State and "was not 'simply implementing the [agency's] decisions' such that its conduct could be 'effectively attributed to the government.'" *Nettles*, 2020 WL 5754456, at *7 (quoting *Brown & Gay*, 461 S.W.3d at 126); *see Brown & Gay*, 461 S.W.3d at 126-27 (holding that contractor was not entitled to share in governmental immunity because it had discretion to design road layouts and signage and governmental agency did not have right to control complained-of conduct).

## DERIVATIVE IMMUNITY

We first consider Levy's and Iteris's argument that they are entitled to share in the City's immunity based on Cheney's allegations and claims against them.

### *Summary of the relevant pleadings and evidence*

Cheney alleged that HDR designed the intersection, including calling for the traffic signals to "operate in 'three-phase signal operation'"; that TxDOT approved the plans; that Levy installed the signals; and that Iteris programmed the signals, including on the morning of Eric's accident. Early in the signal-installation process, the defendants realized that two "detection cameras" were missing and had to be ordered. Because of the missing cameras, the

5

traffic signals were activated in October 2015 using a "four-phase operation" instead of three-phase, as specified in HDR's plans. The signals operated that way for 132 days until the missing cameras were received. On February 10, 2016, per Cheney's pleadings, the City "dispatched" two Iteris employees, a City employee, and "Levy Co." to rewire the traffic signals, install the new cameras, and reprogram the signals, "making it the only traffic signal" in the City using a three-phase operation. Cheney alleged, "For some bizarre reason, in implementing its decision to switch the traffic signals' phasing pattern from four-phase to three-phase, these Defendants did so with absolutely no advance warning to the traveling public," during a high-traffic time and in the middle of the week. Cheney also asserted that although the City "had actual knowledge that implementing a drastic change to the traffic signals' programming with no advance warning whatsoever would likely cause traffic fatalities," it "sent" Iteris's employees and a City employee to "implement the decision to change the traffic signals' programming without any warning or advance notice." About fifteen minutes after the signal pattern was changed, she alleged, Eric was killed in an accident.

In asserting her claims of negligence against Levy and Iteris, Cheney pled that Iteris "maintained and programmed" the traffic signals and reprogrammed them on the morning of Eric's accident and that Levy "installed the traffic signal [and] the detection cameras and rewired the control console." She asserted that Iteris and Levy owed "a duty to exercise ordinary care in designing, installing, and programming the traffic signals." She further alleged that Iteris breached its duty "by implementing the decision to change" the signal pattern "without accounting for driver reaction and resulting behaviors, and without first erecting a warning sign" notifying drivers of the "dramatic change in the traffic pattern." She also asserted that Iteris and Levy acted negligently in "implement[ing] the decision to change" the signal timing in the

6

middle of the week and the middle of the day "despite knowing that industry standards require that signal changes which will significantly affect the flow of traffic be made outside" peak traffic times.

Cheney provided an affidavit by licensed professional engineer Thomas Grubbs, who opined that HDR and Iteris were negligent "in designing and altering" the signal timing. Grubbs noted that there had been only eight accidents, with no fatalities, in the 132 days before the signal timing changed, and that there were nine accidents in the week following the change. He also averred that the fact that other interchanges in the City use four-phase operation "bolster[s] the public's expectation" of how the traffic lights would operate, and that Iteris "knew or should have known that operating a diamond Interchange in a significantly different configuration than the three established, adjacent intersections along a common expressway created a hazardous condition," particularly when the intersection had been using a four-phase operation for the 132 days preceding the abrupt change. Grubbs further stated that Iteris "should have accounted for driver reaction and resulting behaviors" but that it did not do so and instead "suddenly reprogrammed" the signals in the middle of the day rather than outside of peak traffic, such as "late at night, on weekends, etc." Grubbs averred that Iteris should have provided motorists with advance notice and "put up a warning on the day of the phasing change" and that its failure to do so was negligent. Grubbs did not mention Levy in his affidavit.

Iteris argued in its plea to the jurisdiction that it should share in the City's immunity from suit because its conduct should be "effectively attributed to the government." Iteris stated that it performed its work on the intersection "pursuant to the instruction of the City of Killeen and TxDOT," that the City "chose the traffic signal operating pattern," and that the City had "dispatched" Iteris and directed it to change the signal pattern. Iteris insisted that it

7

"had no independent discretion in its programming of the traffic signal" and that it "operated exclusively" at the direction of the City and TxDOT. Iteris explained that it did not have a contract with the City or with TxDOT and that it only contracted with Levy, as the general contractor on the job. Iteris also explained that "the controlling document" between it and Levy required that all services "be completed in strict accordance with the plans and specifications" of the City and TxDOT. Iteris noted that it had no role in designing the intersection or the traffic signals and claimed that its "role was to simply program the traffic signal in accordance with its instructions." Thus, Iteris insisted, it "acted essentially as an 'organ of the government,' and had no ability to make its own decisions regarding the traffic signal pattern." Iteris continued:

> [A]ssuming Iteris maintained any discretion or authority in implementing the City's and TxDOT's plan, such discretion would not have addressed the omitted actions Plaintiff alleges Iteris should have taken, i.e. putting out warnings and/or signals prior to changing the phasing patterns. The authority to order such actions presided with the entity having jurisdiction over the roadway, here the City.

As evidence, Iteris attached Cheney's pleadings, which alleged that the City had "dispatched" or "sent" Iteris and others to reprogram the traffic signals on the morning of Eric's accident; her response to Iteris's plea; this Court's opinion holding that the City was immune from Cheney's claims, *see City of Killeen*, 2018 WL 5832088, at *6-8; a copy of a document titled "Purchase Order Notes," which stated that Iteris's work for Levy and on the intersection "shall be in strict accordance with plans and specifications of the Texas Department of Transportation and City of Killeen as prepared for this project"; and Iteris's discovery responses. In its responses to requests for production and disclosure, Iteris stated in relevant part: that it had not contracted with the City; that it was a subcontractor and Levy was the "prime" contractor on the project; that "purchase orders, quotes and invoices" were "the only 'agreements' in place

8

between Iteris and Levy"; that it did not possess any documents "regarding the changing of the phasing" or between it and the City related to the traffic signal or the intersection in general; and that "[w]ith respect to the traffic signal phasing, Defendant followed the direct, specific instructions of the City of Killeen in all aspects with respect to changing the phase programming."[3] In its answers to Cheney's interrogatories, Iteris stated:

- Iteris did not design and did not provide maintenance services. Iteris was the equipment supplier of the traffic control device for the project and assisted Levy (the prime) with the equipment installation and configuration of it.

- [Iteris] does not own or control the intersection or traffic control device. [Iteris] was a subcontractor to the prime contractor, Levy Co. [Iteris] performed the work in accordance with the City-approved plans, i.e., install and configure setup of the detection equipment. [Iteris] was a sub to Levy Company, the prime contractor to City of Killeen. At no time was [Iteris] in control of the traffic control device but simply performed work on the device in the presence of the City of Killeen and Levy.

- On February 10, 2016, [Iteris] changed the signal phasing in the morning, per the City's request. The intersection effort was to rephase signal and program the cameras to be installed. [Iteris] programmed them by changing the phasing from 4 to 3 phase and verified proper operation. A City personnel and technician personnel from the prime, Levy, were present.

- The specifications are approved by the City of Killeen and the change made in the phase was requested by the City. The City of Killeen would be the appropriate party to respond to this question. [Iteris] simply performed work in accordance with the specification of the City of Killeen.

- [Iteris] objects to this request [asking for response about Iteris's "decision not to place any type of warning sign at the Intersection"] as it assumes that [Iteris] owed a duty or had responsibility for the intersection in question. Further, it presumes that [Iteris] could place a warning sign. Subject to the foregoing objection and without waiving same: [Iteris] did not make a decision to not place any type of warning sign at the Intersection. [Iteris] does not own or control the intersection and has no authority to place signs. The City of Killeen owns and controls the intersection and would have made any decisions concerning signage.

---

[3] In answer to a request for any communications between it and TxDOT or "any other person related to the Traffic Control Device, Intersection, or this Lawsuit," Iteris referenced an email it sent to TxDOT, but that email was not included in the record as having been attached to any of the documents related to the plea to the jurisdiction.

9

- On or about October 1, 2015, Fidel Garza, Technical Sales and Engineering Specialist with Iteris, turned on the traffic signal controller. He connected the cables, configured and turned on the traffic signal controller. Billy Stottler and George Lueck from the City were present and the prime contractor, Maury Miliron of Levy, was present. The system was set up in a four-phase configuration per the direction of the City of Killeen. Iteris did not determine the configuration set up. Later, Iteris was notified that the cameras were in and scheduled set up of the detection equipment. The exact date is unknown.

- On February 10, 2016, James Drake of Iteris . . . met Billy Stottler (City) and a technician from Levy to install/configure the cameras. The City of Killeen requested that the signal phasing be changed. Iteris programmed according to the City's instruction. Drake and Stottler stayed and watched the traffic signal function for a few hours before leaving the site. Drake arrived around 8 a.m. and left at approximately 10:30 a.m.

Levy, which sought dismissal under rule 91a, pointed only to Cheney's petition and did not put forth any evidence. *See* Tex. R. Civ. P. 91a.6 (court may not consider evidence in determining rule 91a motion and must decide motion based solely on claimant's pleadings).

*Discussion*

As the supreme court did in *Nettles* and *Brown & Gay*, we will consider whether Iteris and Levy might be entitled to an extension of the City's immunity from suit as if—but without holding that—the doctrine of derivative immunity is recognized in Texas. *See Nettles*, 2020 WL 5754456, at *5-8; *Brown & Gay*, 461 S.W.3d at 126. Iteris and Levy insist that they had no discretion as to the reprogramming of the traffic signals and that they conducted their duties on the intersection project solely as an arm of the City and TxDOT. However, the evidence, viewed in the light most favorable to Cheney, as required by the applicable standard of review, does not conclusively establish a lack of discretion that might justify the extension of the City's sovereign immunity to Iteris and Levy. *See Steele*, 549 S.W.3d at 773-74.

Cheney pled that the City "dispatched" or "sent" Iteris and Levy to change the signal pattern the morning of Eric's accident, that Iteris and Levy "implemented" the signal

10

change, and that their doing so without notice in the middle of the week and in the middle of the morning was negligent. She also provided Grubbs's affidavit, which stated that Iteris knew or should have known that a sudden change in a traffic-signal pattern can create a hazardous condition. The record contains no information about why that morning was chosen or by whom, and, as Cheney notes, Iteris stated in its interrogatories that it "scheduled set up of the detection equipment" when it learned that the missing cameras had arrived. Iteris did not have a contract with either the City or TxDOT and pointed only to one very brief document, titled "Purchase Order Notes," which stated simply that Iteris's "materials/services furnished herein shall be in strict accordance with plans and specifications" prepared for the project. Levy's contract with the City does not appear in the record, and we therefore cannot assess whether it gave the parties any discretion in conducting their work as to the traffic signals. The record contains no evidence about whether Iteris or Levy, the entities charged with installing or programming the traffic signals, were contractually stripped of any discretion to schedule the programming change, to express concerns about making the change midday and midweek, to recommend a different date or time for the change, or to suggest or even install warning signage. *Cf. Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 422 (Tex. 2011) (although not considering whether contractor was entitled to extension of sovereign immunity, concluding that contractor was entitled to summary judgment because it worked under contract "that required strict compliance" and "had no discretion to vary from its terms" and thus had no duty to rectify or duty to warn).

Cheney pled facts that, if true, might entitle her to relief, and neither Levy nor Iteris established conclusively and as a matter of law that it acted solely as an extension of a governmental entity so as to be entitled to dismissal under the doctrine of derivative immunity, if such a doctrine applies in Texas courts. We therefore sustain Cheney's issues in cause numbers

11

03-19-00334-CV and 03-19-00335-CV challenging the dismissal of her claims against Levy and Iteris based on derivative immunity.

Cheney also argues that Levy improperly raised the issue of derivative immunity by way of a rule 91a motion. *See* Tex. R. Civ. P. 91a.1 (party may seek dismissal if "allegations, taken as true, together with inferences reasonably drawn from them do not entitle the claimant to the relief sought"); *id*. R. 91a.6 (court may not consider evidence and must decide motion solely based on pleadings and any pleading exhibits permitted by rules). However, we have held that Levy did not establish its right to derivative immunity, and that holds true even if the issue was properly raised by Levy's motion. We therefore need not address the propriety of Levy's use of a rule 91a motion to assert a defense of derivative sovereign immunity. *See* Tex. R. App. P. 47.1 (opinions must be as brief as possible). However, the version of rule 91a.7 in effect at the time Cheney filed her suit provided that a trial court "must award the prevailing party on the [rule 91a] motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court." *See* former Tex. R. Civ. P. 91a.7, Misc. Docket No. 13-9022 (effective Mar. 1, 2013, amended by Misc. Docket No. 19-9052). On remand, therefore, the trial court must consider Cheney's entitlement to attorney's fees for having defended against Levy's rule 91a motion raising its attempted jurisdictional defense.

## CERTIFICATE OF MERIT

In cause number 03-19-00243-CV, we are asked whether the trial court properly dismissed Cheney's claims against Levy because she failed to file a certificate of merit.

In a suit "arising out of the provision of professional services by a licensed or registered professional," a claimant must file an affidavit of "a third-party licensed architect,

12

licensed professional engineer, registered landscape architect, or registered professional land surveyor" who is competent, "holds the same professional license or registration as the defendant," and practices in the defendant's area of practice. Tex. Civ. Prac. & Rem. Code § 150.002(a). The affidavit, referred to as a "certificate of merit," must:

> set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

*Id*. § 150.002(b). A claimant's failure to file the affidavit "shall result in dismissal of the complaint against the defendant." *Id*. § 150.002(e). A "licensed or registered professional" is:

> a licensed architect, licensed professional engineer, registered professional land surveyor, registered landscape architect, or any firm in which such licensed or registered professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity.

*Id*. § 150.001(1-c). We review the trial court's decision for an abuse of discretion, *see M-E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 500 (Tex. App.—Austin 2012, pet. denied), asking whether the claims against Levy arise out of the provision of professional services within section 150.002(a), *see Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 55-56 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Levy sought dismissal by arguing that Cheney's petition:

> alleges that Levy was negligent in designing and implementing a traffic plan change in ¶¶ 45, 46, 50 and 51 of the Petition, but provides no Certificate of Merit

13

to substantiate the design and design implementation allegations against Levy. To the extent Levy has any responsibility for the design decision and implementation, a Certificate of Merit was required as it implicates "professional services" within the meaning of the statute. The Certificate of Merit attached to Plaintiff's pleading addresses the negligence of other Defendants, but not Levy. Accordingly, Plaintiff's claims against Levy arising from the provision of "professional services" (design and design implementation) should be dismissed with prejudice pursuant to [section 150.002(e)].

The paragraphs in Cheney's petition cited by Levy read as follows:

45. Defendant Levy Co. installed the traffic signal at the Rosewood/CTE Interchange; specifically, Levy Co. installed the detection cameras and rewired the control console on the morning of February 10, 2016.

46. Iteris, HDR Engineering, and Levy Co. owed Mr. Cheney and Plaintiff a duty to exercise ordinary care in designing, installing, and programming the traffic signals for the Rosewood/CTE Interchange.

50. Moreover, Iteris and Levy Co. acted negligently when they implemented the decision to change the Intersections' phasing pattern in the middle of the week (a Wednesday), and in the middle of the morning (approximately 10:00 am), despite knowing that industry standards require that signal changes which will significantly affect the flow of traffic be made outside of the intersections' peak hour flow (i.e. late at night or on the weekends when the roadways experience less traffic).

51. As a direct result of HDR Engineering's, Iteris', and Levy Co.'s negligence, decedent, Eric Cheney was killed at the Intersection, and Plaintiff suffered actual injury.

The trial court agreed with Levy and ordered that Cheney's "professional engineering allegations" against Levy "relating to design and programming of traffic signals as well as Plaintiff's allegations involving decision-making as to traffic control devices are dismissed" based on Cheney's failure to provide a certificate of merit as to Levy.

A certificate of merit is required only when the claims arise out of "the provision of professional services by a licensed or registered professional," Tex. Civ. Prac. & Rem. Code § 150.002(a), and Levy did not assert in its motion that it is licensed or registered. Indeed, Cheney stated in her response to Levy's motion to dismiss that Levy, which had contracted with Iteris, a registered engineering firm, is itself "a 'heavy highway and electrical construction company' specializing in 'the installation and maintenance of all traffic signal systems,' and neither it, nor its principals, are licensed professional engineers in the state of Texas." As support for that assertion, Cheney attached Levy's descriptions of itself, its principals, and their experience from its corporate website, as well as reports showing that no records matched searches for Levy or either of its principals in the Texas Board of Professional Engineers roster.

Levy does not argue that it, its principals, or its employees are "licensed or registered professionals." Instead it insists that a certificate of merit was required because Cheney alleged that Levy was involved "in 'design,' 'programming' and traffic control device decisions." Levy argues that Cheney "cannot allege that Levy was involved in 'design,' 'programming' or decision-making relating to the placement of traffic control devices to warn the travelling public and, at the same time, argue in good faith that engineering judgment was not required." It also contends that Cheney "broadly alleged that Iteris, HDR, and Levy owed a duty to exercise ordinary care in 'designing, installing, and programming' the traffic signals."

Although Cheney grouped her claims against Levy in the section of her petition also leveling claims against HDR and Iteris—some of which implicate those parties' professional engineering and design work—a fair reading of her petition shows that she was not seeking to hold Levy liable for designing the interchange or the traffic-signal pattern or for the placement of the traffic signals. Instead, she specified that Levy was liable for negligence related to its

15

installation of and work on the traffic signal, specifically alleging that Levy should have known that a traffic pattern should not be changed without warning and during a high-traffic time. Furthermore, there is nothing in the statute to lead us to conclude that "programming," installing, or wiring a traffic signal should be considered a "professional service" provided by a "licensed or registered professional" as contemplated by section 150.002. *See id*. § 150.002; *see also Pelco Constr.*, 404 S.W.3d at 58 (claims against consulting company that contracted with engineering firm did not require certificate of merit). The trial court therefore erred in concluding that Cheney was required to file a certificate of merit related to Levy's work on the project and her claims against Levy.

We sustain Cheney's issue in cause number 03-19-00243-CV.

## CONCLUSION

We have held that Levy was not entitled to dismissal of Cheney's claims under section 150.002 and that neither Levy nor Iteris showed itself entitled to dismissal under the doctrine of derivative immunity, if such a doctrine applies in Texas. We therefore reverse the trial court's orders of dismissal and remand the causes to the trial court for further proceedings.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith

Reversed and Remanded

Filed: October 23, 2020

16