**Opinion issued January 18, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00307-CV

————————————

**COSTELLO, INC. AND ALEX KHOSHAKHLAGH, P.E., Appellants**

**V.**

**BRIGGS BROTHERS ENTERPRISES CORPORATION, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 23-DCV-30067**

---

## MEMORANDUM OPINION

Appellants—Alex Khoshakhlagh, P.E., and his employer Costello, Inc.—challenge the trial court's order denying their motion to dismiss appellee Briggs Brothers Enterprises Corporation's (BBEC) tortious interference claim. The motion to dismiss was based on Civil Practice and Remedies Code section 150.002(a),

which requires a plaintiff suing for damages arising out of the provision of professional services by a licensed or registered professional, such as an engineer, to file with its complaint an affidavit, commonly referred to as a certificate of merit. It is undisputed that BBEC did not file a certificate of merit.

Costello and Khoshakhlagh contend that the trial court erred because BBEC's tortious interference claim arose out of the provision of professional engineering services, thus section 15.002(a) required BBEC to file a certificate of merit prepared by a qualified third-party engineer. Because we conclude that the record supports the trial court's implied conclusion that section 150.002(a) does not apply to BBEC's tortious interference claim, we affirm the trial court's order denying Costello and Khoshakhlagh's motion to dismiss.

## Background

In January 2023, BBEC sued Costello and Khoshakhlagh along with Fulshear Municipal Utility District MUD No. 1 (Fulshear MUD).[1] In its original petition, BBEC described itself as "a successful and trusted contractor with experience in the construction industry, including experience performing earthwork and paving work." BBEC alleged that it "performed labor and furnished materials necessary for the construction of five [Fulshear MUD] projects." BBEC listed the five projects and their titles, which indicated that the projects entailed paving and grading work.

---

[1] Fulshear MUD is not a party to this appeal.

2

BBEC stated that it performed the work "pursuant to separate contracts [with Fulshear MUD] for each of the projects."

BBEC claimed that, although it had substantially performed under the five construction contracts, Fulshear MUD failed to pay it what it was contractually owed. Based on these allegations, BBEC asserted causes of action against Fulshear MUD for breach of contract and violation of the Texas Prompt Payment Act and sought declaratory relief.

Regarding Costello and Khoshakhlagh, BBEC alleged,

Costello and its employee Khoshakhlagh acted as the engineer and owner's representative on the projects. Throughout the projects, Khoshakhlagh and Costello interfered with BBEC's contracts with both subcontractors and Fulshear MUD. For example, Costello, through Khoshakhlagh, solicited baseless and fraudulent claims for nonpayment from BBEC's subcontractors. Further, knowing that various subcontractors' nonpayment claims were without merit, Costello, through Khoshakhlagh, nonetheless used the baseless claims it had solicited to encourage Fulshear MUD to cease paying BBEC, an endeavor in which Costello ultimately succeeded.

BBEC sued Costello and Khoshakhlagh for tortious interference with the existing contracts. Specifically, BBEC asserted,

BBEC had valid contracts with Fulshear MUD and various subcontractors, suppliers, and other vendors. Costello and Khoshakhlagh tortiously interfered with these contracts by soliciting fraudulent nonpayment claims from vendors, disparaging BBEC, and encouraging Fulshear MUD to stop paying and/or terminate BBEC based upon the fraudulent claims. Costello and Khoshakhlagh's interference proximately caused BBEC actual damages. BBEC also seeks recovery of exemplary damages.

3

Costello and Khoshakhlagh filed a motion to dismiss BBEC's tortious interference claim. They asserted that BBEC did not comply with Civil Practice and Remedies Code section 150.002, requiring that a certificate of merit, signed by a qualified professional, accompany a plaintiff's "complaint" in an action "aris[ing] out of the provision of professional services by [certain] licensed or registered professional[s]," such as engineers. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a).[2]

In their dismissal motion, Costello and Khoshakhlagh stated that Fulshear MUD hired Costello, "an engineering firm," and Khoshakhlagh, "a licensed engineer under the State of Texas," to serve as "the professional engineer" for Fulshear MUD's "projects at issue." They asserted that they were retained by BBEC "to provide the engineering, consulting, construction management, inspection services, and other professional services as authorized by Fulshear MUD." They claimed that, "as part of their professional engineer services," they were required to

---

[2]  The legislature amended section 150.002 in 2023, but the amendments apply only to actions filed on or after September 1, 2023. *See* Act of May 17, 2023, 88th Leg., R.S., ch. 438, §§ 1–3, 2023 Sess. Law Serv. 1037, 1037–38. This suit is governed by the pre-amendment version of section 150.002 because it was filed before September 1, 2023. Thus, all our citations refer to the pre-amendment version of section 150.002. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 661, § 2, 2019 Sess. Law Serv. 1916, 1916–17.

4

review "applications for payment" submitted by Fulshear MUD's contractors and "[to] make recommendations to the Fulshear MUD regarding such applications."[3]

In its response to the motion, BBEC asserted that it was not required to file a certificate of merit. BBEC pointed to its previous allegation that Costello and Khoshakhlagh had "acted as both the engineer and the owner's representative on [Fulshear MUD's] projects." BBEC repeated its allegations that, "[d]uring the course of construction [of Fulshear MUD's projects], Khoshakhlagh solicited fraudulent non-payment claims from BBEC's subcontractors, advised Fulshear MUD to withhold payment to BBEC for labor and materials BBEC provided to the projects, and encouraged Fulshear MUD to terminate its contracts with BBEC." BBEC explained that "[t]he acts creating [its tortious interference] claim were the misrepresentations regarding project financing and alleged unpaid subcontractors." It asserted, "Khoshakhlagh made these misrepresentations while serving as the project manager/owner representati[ve] and not as a licensed engineer. The misrepresentations were not made in reference to any professional engineering activities."

---

[3] After Costello and Khoshakhlagh filed the motion to dismiss, Fulshear MUD filed a counter-claim against BBEC for breach of contract. Fulshear MUD alleged that it had received notices from BBEC's subcontractors and suppliers stating that BBEC had not paid them. As permitted by the parties' contract, Fulshear MUD withheld part of its payments to BBEC based on the non-payment notices. Fulshear MUD alleged that BBEC then refused to finish its work on the projects in breach of the contract.

Costello and Khoshakhlagh replied. They claimed, "Providing contract administration services is a professional service that Costello Defendants were contractually required to provide to Fulshear MUD. Owners typically request these construction phase and contract administration services to ensure that a project is built in accordance with the design professional's plans and specifications."

The trial court denied the motion to dismiss, and Costello and Khoshakhlagh now appeal the denial. *See id.* § 150.002(f) ("An order granting or denying a motion for dismissal [under section 150.002] is immediately appealable as an interlocutory order.").

**Certificate of Merit**

In their sole issue, Costello and Khoshakhlagh (together, Appellants) assert that the trial court erred in denying their motion to dismiss BBEC's tortious interference claim because BBEC did not file a certificate of merit with its original petition as required by section 150.002.

**A.    Standard of Review**

We review a trial court's order on a motion to dismiss under Civil Practice and Remedies Code section 150.002 for an abuse of discretion. *TRW Eng'rs, Inc. v. Hussion St. Bldgs., LLC*, 608 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2020, no pet). "A court abuses its discretion if it fails to analyze or apply the law correctly," *id.*, and when it makes decisions in an arbitrary or unreasonable manner,

6

without reference to guiding rules or principles, *Pedernal Energy, LLC. v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 492 (Tex. 2017). "As the party complaining of an abuse of discretion, [Appellants have] the burden of bringing forth a record showing such abuse." *See Jacobs Field Servs. N. Am., Inc. v. Willeford*, No. 01-17-00551-CV, 2018 WL 3029060, at *3 (Tex. App.—Houston [1st Dist.] June 19, 2018, no pet.) (mem. op.).

If the resolution of a motion to dismiss requires us to construe statutory language, we review such questions de novo. *Pedernal Energy*, 536 S.W.3d at 491. In construing a statute, our goal is to determine and give effect to the legislature's intent. *Id.* "We look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Id.* We construe the words and phrases chosen by the legislature in context, rather than in isolation. *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019).

## B. Applicable Legal Principles

Section 150.002(a) requires a plaintiff to file a certificate of merit in "any action . . . for damages arising out of the provision of professional services by a licensed or registered professional." TEX. CIV. PRAC. & REM. CODE § 150.002(a). By its plain language, the statute applies to "any action arising out of the provision of professional services, regardless of the legal theory." *Melden & Hunt, Inc. v. E. Rio*

7

*Hondo Water Supply Corp.*, 520 S.W.3d 887, 894 (Tex. 2017). Chapter 150 defines a "licensed or registered professional" to include "a licensed professional engineer . . . or any firm in which such . . . professional practices." TEX. CIV. PRAC. & REM. CODE § 150.001(1–c). "The term 'arising out of' is not defined in the statute. The ordinary meaning of 'arise' is '[t]o originate; to stem (from) . . . to result (from).'" *Terracon Consultants, Inc. v. N. Pride Commc'ns, Inc.*, No. 01-22-00755-CV, 2023 WL 2316351, at *4 (Tex. App.—Houston [1st Dist.] Mar. 2, 2023, no pet.) (mem. op.) (quoting *Arise*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

A claim "arises out of the provision of professional [engineering] services if the claim implicates the engineer's education, training, and experience in applying special knowledge or judgment." *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 343 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). To determine whether a plaintiff's claim "arises out of" the provision of professional engineering services, we look to the definition of the "practice of engineering" in the Texas Occupations Code and to the allegations in the plaintiff's petition. *Terracon Consultants*, 2023 WL 2316351, at *4 (citing *CBM Eng'rs*, 403 S.W.3d at 343); *see* TEX. CIV. PRAC. & REM. CODE § 150.001(3) ("'Practice of engineering' has the meaning assigned by Section 1001.003, Occupations Code."); *Jennings, Hackler & Partners v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas

8

2015, pet. denied) ("To determine whether and how § 150.002 applies, we consider the live pleadings when the trial court ruled on the motion to dismiss.").

When it applies, section 150.002 "obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis." *Melden & Hunt*, 520 S.W.3d at 896. The certificate of merit must be filed with the first-filed complaint that asserts the relevant claim against the professional. *See* TEX. CIV. PRAC. & REM. CODE §§ 150.001(1-b), 150.002(a); *TRW Eng'rs*, 608 S.W.3d at 321. "The trial court then determines whether the expert's affidavit sufficiently demonstrates that the complaint is not frivolous." *Melden & Hunt*, 520 S.W.3d at 896; *see LaLonde v. Gosnell*, 593 S.W.3d 212, 216 (Tex. 2019) ("The certificate-of-merit requirement is a substantive hurdle that helps ensure frivolous claims are expeditiously discharged."). Failure to file a certificate of merit in such instances requires dismissal of the complaint against the defendant. TEX. CIV. PRAC. & REM. CODE § 150.002(e).

## C.    Analysis

To determine whether section 150.002 applies here, the threshold questions are (1) whether Appellants are licensed or registered professionals and (2) whether BBEC's tortious interference claim constitutes an action for damages "arising out of the provision of professional services." *See Terracon Consultants*, 2023 WL 2316351, at *4 (citing TEX. CIV. PRAC. & REM. CODE § 150.002(a)). The parties do

not dispute that Khoshakhlagh is a licensed engineer or that Costello is a licensed professional engineering firm. *See* Tex. Civ. Prac. & Rem. Code § 150.001(1–c). Instead, the dispute centers on whether BBEC's claim for tortious interference damages arises out of Appellants' provision of professional engineering services. *See* Tex. Civ. Prac. & Rem. Code § 150.002(a). To make that determination, we look to the definition of the 'practice of engineering' in the Occupations Code and to the allegations in BBEC's original petition. *See Terracon Consultants*, 2023 WL 2316351, at *4.

In its original petition, BBEC alleged that Appellants "acted as the engineer and [as Fulshear MUD's] representative on the projects." Beyond that, BBEC did not elaborate or offer a more detailed description of the engineering services provided by Appellants to Fulshear MUD. Nor did BBEC elaborate on Appellants' role as Fulshear MUD's "representative on the projects."

BBEC alleged that Appellants had "solicited baseless and fraudulent claims" from BBEC's subcontractors. Specifically, BBEC claimed that Appellants had encouraged the subcontractors to falsely state to Fulshear MUD that BBEC had failed to pay them. BBEC further alleged that, knowing that the subcontractors' claims of non-payment had no merit, "Costello, through Khoshakhlagh, nonetheless used the baseless claims [of nonpayment that] it had solicited [from the subcontractors] to encourage Fulshear MUD to cease paying BBEC, an endeavor in

10

which Costello ultimately succeeded." BBEC asserted that, based on the subcontractors' claims of non-payment solicited by Appellants, Fulshear MUD did not pay BBEC what it was contractually owed.

Later in the petition—in conjunction with asserting its tortious interference cause of action—BBEC reiterated these allegations. BBEC alleged that it had "valid contracts with Fulshear MUD and various subcontractors, suppliers, and other vendors," but "Costello and Khoshakhlagh tortiously interfered with these contracts by soliciting fraudulent nonpayment claims from vendors, disparaging BBEC, and encouraging Fulshear MUD to stop paying and/or terminate BBEC based upon the fraudulent claims." BBEC asserted that Appellants' interference with the contracts proximately caused it actual damages.

Under the Occupations Code, the "practice of engineering" means "the performance of . . . any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." TEX. OCC. CODE § 1001.003(b). The Occupations Code further provides:

(c) The practice of engineering includes:

. . . .

11

(9) engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications; [or]

. . . .

(12) any other professional service necessary for the planning, progress, or completion of an engineering service.

*Id.* § 1001.003(c)(9), (12).

Appellants asserted that their actions, from which the claimed tortious interference damages arise, qualify as the practice of engineering under subsections (c)(9) and (12). Appellants acknowledge that their alleged tortious conduct of soliciting BBEC's subcontractors to falsely state that they had not been paid and encouraging Fulshear MUD not to pay BBEC based on those false statements do not qualify as professional engineering services. Appellants correctly point out that "section 150.002 does not require the specific acts creating the claim for the tort [to] also constitute the provision of professional services. Instead, the acts creating the claim must 'aris[e] out of the provision of professional services.'" *Pelco Const., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 55 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE § 150.002(a)); *see Jennings*, 471 S.W.3d at 581 (recognizing that issue is not "whether the alleged mal-acts themselves constituted the provision of professional services, but whether the claims arise out of the provision of professional services").

12

Appellants asserted they were retained by BBEC "to provide the engineering, consulting, construction management, inspection services, and other professional services as authorized by Fulshear MUD." Appellants claimed that, as part of these professional engineering services, they were required to review "applications for payment" submitted to Fulshear MUD by its contractors, like BBEC, and "[to] make recommendations to the Fulshear MUD regarding such applications." According to Appellants, professional engineers are "typically" hired to review contractor payment applications because the review involves "ensur[ing] that a project is built in accordance with the design professional's plans and specifications."

Appellants asserted that the acts creating the tortious interference claim—that is, Appellants alleged false statements regarding the non-payment of BBEC's subcontractors—arose out of Appellants' review and recommendations regarding BBEC's payment applications—conduct that Appellants claimed constituted a professional engineering service. BBEC acknowledged that Appellants reviewed their payment applications for Fulshear MUD but denied that Appellants provided that service in their role as licensed engineers.

In support of their argument, Appellants cite *V.R. & Sons, L.P. v. CIVE Consulting, Inc.*, a case in which the pleadings supported a conclusion that the review of a contractor's payment application constituted the practice of engineering under Occupations Code subsections 1001.003(c)(9) and (12). *See* No. 01-11-

13

00967-CV, 2012 WL 3133605, at *4 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, no pet.) (mem. op.). We agree that *V.R. & Sons* is helpful to the analysis here but disagree that it supports Appellants' position. Instead, *V.R. & Sons* serves to highlight why the pleadings here, unlike there, do not establish that Appellants' review of BBEC's payment applications constituted the practice of engineering.

In *V.R. & Sons*, the owner of a hotel project hired a contractor to construct the hotel. *Id.* at *1. The agreement between the owner and the contractor "required the owner to make progress payments to the contractor, and it stated that an architect— identified in the contract as appellee CIVE Consulting—would review the contractor's work as described in the applications for payment and certify to the owner the amount of money owed." *Id.* Steve Williams acted as CIVE's "principal representative on the project." *Id.*

The owners later sued the CIVE and Williams along with the contractor. The owners attached their agreement with the contractor to their petition and incorporated it by reference. *Id.* at *3. The agreement contained the building specifications for the project and provided that CIVE would "review" the contractor's work, including comparing the contractor's work to the building specifications. *Id.* at *3–4. The owners claimed, inter alia, "that [CIVE and Williams] committed negligence by breaching a duty to properly inspect the work

14

performed by the contractor and by failing to properly certify applications for payment." *Id.* at *3.

CIVE and Williams "filed a motion to dismiss the owners' claims, arguing that the owners were required to file a certificate of merit and failed to do so." *Id.* at *2. They claimed that section 150.002 applied because "the owners' claimed damages arose from their provision of professional services." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 150.002(a)). The trial court agreed, dismissing the owners' claims. *Id.*

On appeal, this Court affirmed the trial court's dismissal order. *Id.* at *4. In our analysis, "we examine[d] the specific allegations [in the owners' petition] and compare[d] them with the statutory definition of the practice of engineering to determine if the [owners'] claims implicate[d] the provision of professional services." *Id.* at *3. The allegations in the owners' pleadings had shown that, "to review and substantiate the contractor's applications for payment, CIVE Consulting and Williams were required to provide inspection, certification, and oversight services in connection with a construction project." *Id.* at *4. We determined that "[t]hese duties are included within the 'practice of engineering,' which include[d] . . . 'any other professional services necessary to complete an engineering service.'" *Id.* (quoting TEX. OCC. CODE § 1001.003(12)). We also determined that "the review of the contractor's applications for payment required comparison of the

15

contractor's work to the specifications incorporated into the contract documents, which also qualifie[d] as the 'practice of engineering.'" *Id.* (citing TEX. OCC. CODE § 1001.003(9) (providing that practice of engineering included "engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications"). For these reasons, we concluded that "the services that Williams provided implicated the special knowledge and training that he had as a licensed professional." *Id.* In affirming the trial court's dismissal of the owners' claims, we "agree[d] with the trial court that the underlying claims in [that] case constitute[d] an action for damages arising from the provision of professional services by a licensed professional." *Id.*

In contrast, BBEC's petition does not show that, "to review and substantiate the contractor's applications for payment, [Appellants] were required to provide inspection, certification, and oversight services in connection with a construction project." *See id.* Appellants assert that the contract between Costello and Fulshear MUD required Appellants to make payment recommendations in their capacity "as the principal engineer of the Projects." But, unlike in *V & R Sons*, the petition does not reveal the contract requirements relating to pay recommendations, nor was any contract attached to the petition. *See id.* at *3. BBEC's petition also does not indicate, as did the petition in *V & R Sons*, that Appellants were required to inspect BBEC's work to determine whether it complied with the required building specifications as

16

part of the payment-review and substantiation process. *See id.* at \*3, \*4. Without similar allegations, subsection 1001.003(c)(9) does not support a determination that Appellants' review of BBEC's payment applications constituted the practice of engineering. *See* TEX. OCC. CODE § 1001.003(c)(9) (practice of engineering includes "engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications").

The petition also contains no allegations that can be construed to support a determination that Appellants' review of BBEC's payment applications and payment recommendations was "necessary for the planning, progress, or completion of any engineering service," as provided in subsection (c)(12). *Id.* § 1001.003(c)(12). We note that subsection (c)(12)'s application is not limited to activities that require an engineer to perform them, but to be included, an activity must be necessary for the planning, progress, or completion of a service that involves the practice of engineering. *See id.* Whether Appellants' application review and payment recommendations were "necessary" to plan, progress, or complete their engineering services cannot be ascertained without knowing what the payment-review process entailed, and the record is silent on that point. *Cf. V & R Sons*, 2012 WL 3133605, at \*4 (showing that review and substantiation of contractor's payment applications was necessary to completion of engineering services where process entailed, inter alia, inspecting and certifying contractor's work).

17

Despite BBEC's allegation that Appellants were hired to perform two roles on the projects—Fulshear MUD's project representative and its project engineer—Appellants maintain that their "role on the Projects was solely that of a professional engineer." We understand Appellants' argument to assert that, because Appellants engaged in the practice of engineering on the projects, BBEC's tortious interference claim necessarily arises out of the provision of professional services. Appellants appear to suggest that, if an engineer provides engineering services to a project, then all the services that he provides on the project constitute the practice of engineering. That view is not supported by section 150.002.

Courts have recognized that "section 150.002 does not apply to every claim against a professional engineer or engineering firm." *Jacobs Eng'g Grp., Inc. v. Elsey*, 502 S.W.3d 460, 467 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The fact that the defendant [is] an engineering firm and was providing services of some kind [is] not dispositive." *See RCS Enters., LP v. Hilton*, No. 02-12-00233-CV, 2013 WL 6795390, at *6 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op.) (holding that plaintiff was not required to file certificate of merit to support claim against engineering firm hired to provide both engineering services and non-engineering third-party inspection services because plaintiff's claim arose from third-party inspection services, not from engineering services); *see also Jacobs Eng'g Grp.*, 502 S.W.3d at 468 (holding that, as pleaded, certificate of merit was not

required in work-place safety suit against professional engineering firm because claim arose out of firm's alleged breach of duties that it owed to employees rather than out of its provision of professional engineering services); *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 755 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that certificate-of-merit requirement did not apply to personal-injury claim against engineering firm hired to provide management services to convention center because claim arose out of firm's negligent operation of elevator and not out of provision of professional engineering services).

Rather than applying to all services provided by a professional engineer, section 150.002 applies only to a claim arising out of the provision of professional engineering services—that is, a claim implicating "the engineer's education, training, and experience in applying special knowledge or judgment." *CBM Eng'rs*, 403 S.W.3d at 343; *see* TEX. OCC. CODE § 1001.003(b). As discussed, Appellants contend that BBEC's tortious interference claim—alleging that Appellants made false statements about BBEC's non-payment of its subcontractors—arose out of Appellants' review of BBEC's payment applications. Reviewing and making recommendations on a contractor's payment application may, as seen in *V & R Sons*, implicate a professional engineer's education, training, and experience in applying special knowledge or judgment. *See* 2012 WL 3133605, at *4. But reviewing payment applications may also not require the special knowledge and judgment of

19

an engineer. For instance, BBEC indicates that Appellants' review of its payment applications did not require engineering skills because the purpose of the review was to ensure that BBEC had paid its subcontractors so that liens would not be filed on the projects. Without allegations in BBEC's petition addressing what the application review process entailed, Appellants have not shown that their review of the payment applications implicated their education, training, or experience as engineers. *See RCS Enters*, 2013 WL 6795390, at \*6; *Rivera.*, 339 S.W.3d at 755; *V & R Sons*, 2012 WL 3133605, at \*4; *see also FAI Eng'rs, Inc. v. Logan*, No. 02-20-00255-CV, 2020 WL 7252315, at \*4 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.) (mem. op.) ("[T]he burden of proof remained with [the movant] to demonstrate that [the claimant's] suit met the requisites of Section 150.002(a) such that [the claimant] was required to file a certificate of merit with his original petition."); *Jacobs Field Servs. N. Am.*, 2018 WL 3029060, at \*3 (stating that appellant had burden to present record showing that trial court abused its discretion by denying appellant's section 150.002 motion to dismiss).

Given the record, we conclude that BBEC's tortious interference claim did not arise from Appellants' provision of professional engineering services and that BBEC was not required to comply with section 150.002 by filing a certificate of merit with its original petition. *See* TEX. CIV. PRAC. & REM. CODE §§ 150.001(1–b), 150.002(a). We hold that the trial court did not abuse its discretion in denying

20

Appellants' motion to dismiss BBEC's tortious interference claim.[4] *See id.* § 150.002(e).

We overrule Appellants' sole issue.

## Conclusion

We affirm the order of the trial court denying Appellants' motion to dismiss.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

---

[4] We need not reach Appellants' additional appellate argument that BBEC's tortious interference claim should be dismissed with prejudice. *See* TEX. R. APP. P. 47.1.